IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN P. MEHALIK, JR., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 13-485 |
| | ) Judge Cathy Bissoon |
| CAROLYN W. COLVIN, ACTING | ) Magistrate Judge Cynthia Reed Eddy |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

# REPORT AND RECOMMENDATION

## I. Introduction

Plaintiff John P. Mehalik, Jr. ("Mehalik"), brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act") [42 U.S.C. §§ 1381-1383f]. The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56.[1] For the reasons that follow, it is respectfully recommended that the Commissioner's decision be vacated, and that the case be remanded for further consideration of Mehalik's application for SSI benefits.

## II. Procedural History

Mehalik protectively applied for SSI benefits on August 26, 2009, alleging that he had become "disabled" on July 31, 2009. R. at 124. Pennsylvania's Bureau of Disability

---

[1] The Court acknowledges that judicial review under the Act is not governed by the standards generally applicable under Rule 56. *Banks v. Shalala*, 43 F.3d 11, 13-14 (1st Cir. 1994); *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985). In this context, the procedure typically employed at the summary-judgment stage of litigation "merely serves as a convenient method under which both parties may present appropriate briefs in support [of] and in opposition to the[ir] respective positions." *Sumler v. Bowen*, 656 F.Supp. 1322, 1330 (W.D.Ark. 1987).

Determination ("Bureau") denied the application on October 1, 2009. R. at 53. Mehalik responded on November 23, 2009, by filing a request for an administrative hearing. R. at 58-60. On March 15, 2011, Mehalik appeared before Administrative Law Judge ("ALJ") Michael F. Colligan. R. at 30. Since Mehalik was not accompanied by an attorney or lay representative, the ALJ offered to postpone the hearing. R. at 32-33. Mehalik accepted the offer and proceeded to retain the services of an attorney. R. at 33.

The rescheduled hearing was held in Pittsburgh, Pennsylvania, on July 5, 2011. R. at 35. Mehalik, who was represented by counsel, appeared and testified at the hearing. R. at 38-47. Samuel E. Edelmann ("Edelmann"), an impartial vocational expert, provided testimony about the expectations of employers existing in the national economy. R. at 47-49. In a decision dated August 4, 2011, the ALJ determined that Mehalik was not "disabled" within the meaning of the Act. R. at 19-29.

On October 11, 2011, Mehalik sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. R. at 15-16. The Appeals Council denied the request for review on February 15, 2013, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. R. at 1. Mehalik commenced this action on April 2, 2013, seeking judicial review of the Commissioner's decision. ECF Nos. 1-3. Mehalik and the Commissioner filed motions for summary judgment on August 26, 2013, and September 26, 2013, respectively. ECF Nos. 10 & 12. Those motions are the subject of this report and recommendation, which is being filed pursuant to 28 U.S.C. § 636(b)(1)(C).

### III.   Standard of Review

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect

to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience,

engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court has summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject

4

to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

**IV.     The ALJ's Decision**

In his decision, the ALJ determined that Mehalik had not engaged in substantial gainful activity subsequent to the date of his application. R. at 24. Mehalik was found to be suffering from chronic obstructive pulmonary disease ("COPD"), sleep apnea, degenerative disc disease of the lumbar spine, degenerative joint disease of the knees, and obesity. R. at 24. His COPD, sleep apnea, degenerative disc disease, and degenerative joint disease were deemed to be "severe" under the Commissioner's regulations. R. at 24; 20 C.F.R. §§ 416.920(a)(4)(ii),

5

416.920(c). The ALJ concluded that Mehalik's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 25.

In accordance with 20 C.F.R. § 416.945, the ALJ assessed Mehalik's "residual functional capacity"[2] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) in that he is limited to working in an air conditioned environment with no exposure to dust, fumes, or odors beyond a well maintained home or office setting. He is precluded from any exposure to temperature extremes.

R. at 25. Mehalik had "past relevant work"[3] experience as a handyman, painter and auto body worker. R. at 27, 47-48, 129. Edelmann classified those positions as "semi-skilled"[4] and "unskilled"[5] jobs falling between the "medium"[6] and "heavy"[7] levels of exertion. R. at 47-48.

---

[2] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[3] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[4] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. §§ 404.1568(b), 416.968(b).

[5] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).

[6] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[7] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567(d), 416.967(d).

Since Mehalik was found to be capable of performing only "light"[8] work, it was determined that he could not return to his past relevant work. R. at 27.

Mehalik was born on March 26, 1961, making him forty-eight years old on the date of his application and fifty years old on the date of the ALJ's decision. R. at 28, 38. He was initially classified as a "younger person" under the Commissioner's regulations.[9] 20 C.F.R. § 416.963(c). Mehalik became a "person closely approaching advanced age" on March 26, 2011, when he reached the age of fifty. 20 C.F.R. § 416.963(d). He had the equivalent of a high school education[10] and an ability to communicate in English. R. at 39, 127, 134; 20 C.F.R. § 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Mehalik could work as a cashier, an assembler, or a sorter/grader. R. at 28. Edelmann's testimony established that those jobs existed in the national economy for purposes of 42 U.S.C. § 1382c(a)(3)(B).[11] R. at 49.

V.     Discussion

Mehalik went to the Forbes Regional Campus of the Western Pennsylvania Hospital on July 28, 2009, complaining of chest pain. R. at 165. Due to concerns that his condition was "cardiac in nature," Mehalik was admitted to the facility for further observation. R. at 168. A

---

[8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[9] The regulations recognize that "younger persons" between the ages of forty-five and forty-nine are more limited in their ability to adjust to other work than are persons who have not yet attained the age of forty-five. 20 C.F.R. §§ 404.1563(c), 416.963(c).

[10] Mehalik quit school after completing the tenth grade. R. at 39. He obtained his General Educational Development ("GED") certification in 1985. R. at 39, 134. Mehalik completed "truck driving school" in September 2002. R. at 134.

[11] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

cardiac stress test performed the next day yielded normal results. R. at 173. Mehalik's lungs were found to be clear. R. at 172. He was apparently discharged later that day.

In August 2009, Dr. John Roger Smith determined that Mehalik was suffering from COPD. R. at 176. The diagnosis resulted from Mehalik's complaints of "persistent cough[ing] and wheezing." R. at 176. He was admitted to the University of Pittsburgh Medical Center's Braddock facility ("UPMC Braddock") on August 19, 2009. R. at 176. An x-ray of his chest detected a "thickening of the minor fissure." R. at 181, 197. Mehalik was discharged from UPMC Braddock on August 22, 2009. R. at 176-177. It was recommended that a sleep study be performed for the purpose of determining whether he had sleep apnea. R. at 176.

Mehalik sought treatment at Steel Valley Orthopedic Associates ("Steel Valley") on September 18, 2009. R. at 227. He complained of bilateral knee pain lasting for several years. R. at 227. Mehalik explained that his pain typically worsened when he was walking, kneeling, or climbing flights of stairs. R. at 227. Injections were administered to both of his knees in order to alleviate his symptoms. R. at 227. Mehalik was instructed to return for follow-up treatment in three months if he was still experiencing knee pain. R. at 227.

On September 28, 2009, Mehalik completed a written "function report" in connection with his application for SSI benefits. R. at 136-146. In response to a series of questions designed to elicit information about his symptoms, Mehalik repeatedly stated that he had been experiencing "no pain." R. at 144-146. He explained that his functional limitations were primarily attributable to breathing difficulties. R. at 136, 139-141, 144-146. Mehalik further reported that one of his lungs was "partially collapsed." R. at 143, 146.

Dr. Juan Mari-Mayans, a nonexamining medical consultant, opined on September 30, 2009, that Mehalik could sit for up to six hours, and stand or walk for up to three hours, during

8

the course of an eight-hour workday. R. at 229. Although no postural, manipulative, visual, communicative or environmental limitations were identified, Dr. Mari-Mayans reported that Mehalik could perform the lifting and carrying requirements of only "light" work. R. at 229-231. Mehalik's pushing and pulling abilities were deemed to be unlimited. R. at 229.

Mehalik returned to Steel Valley on October 16, 2009. R. at 340. He was examined by Dr. Jeffrey M. Matheny. R. at 340. During the encounter, Mehalik complained of "aching discomfort in both knees." R. at 340. The examination of his knees detected "no effusion or soft tissue swelling." R. at 340. Dr. Matheny provided Mehalik with a prescription for Ultram and encouraged him to lose weight. R. at 340.

Dr. Emily Yee, a pulmonologist, examined Mehalik on July 16, 2010. R. at 243-244. On that occasion, Mehalik "admit[ted] to being a long-term marijuana smoker." R. at 243. He was told that he needed to stop smoking in order to improve his condition. R. at 244. X-rays revealed that Mehalik's lungs were clear. R. at 245. Dr. Yee recommended that Mehalik undergo a sleep study. R. at 244. The study was performed on October 24, 2010. R. at 278. It was ultimately determined that Mehalik was experiencing "[r]educed sleep efficiency." R. at 278. A continuous positive airway pressure ("CPAP") machine was prescribed to address that problem. R. at 283.

Mehalik returned to Dr. Yee's office on November 16, 2010. R. at 269. He complained that his CPAP machine had made him feel worse. R. at 269. Dr. Yee advised him to "try to acclimate to the CPAP" machine. R. at 269. Mehalik again "admit[ted] to occasionally smoking marijuana." R. at 269. He was encouraged to stop smoking. R. at 269.

On February 11, 2011, Mehalik went to the office of Advanced Pain Medicine located in Monroeville, Pennsylvania. R. at 293. He complained of increasing pain in his spine, shoulders,

hips, knees and ankles. R. at 293. Mehalik explained that the pain had sometimes "cause[d] him to feel unsteady." R. at 293. He asserted that his pain was "present constantly." R. at 293. Although Mehalik had a cane, he stated that he had rarely used it. R. at 293. Mehalik speculated that his pain could be traced to a motor vehicle accident occurring in 2004. R. at 294. The attending medical personnel suggested that Mehalik "would return to work if he had less pain." R. at 294. Mehalik acknowledged that he had smoked marijuana one week earlier. R. at 294-295. He was instructed to immediately discontinue his marijuana use.[12] R. at 295.

Dr. Yee examined Mehalik on March 29, 2011. R. at 267-268. Mehalik complained of significant pain whenever he increased his physical activities. R. at 267. He stated that he was "still smoking marijuana" because his prescribed medications were not reducing his "chronic pain." R. at 267. Mehalik further asserted that he was unable to tolerate his CPAP machine. R. at 267. Dr. Yee became concerned that Mehalik's noncompliance with his prescribed treatment regimen was partially attributable to depression. R. at 268. She "strongly reinforced" the need for him to stop smoking marijuana. R. at 268.

Mehalik's wife, Deborah Coe ("Coe"), submitted a written statement to the ALJ on June 17, 2011. R. at 162. In her statement, Coe asserted that Mehalik could not walk up a flight of stairs "without gasping for air" and stopping three to four times. R. at 162. She also stated that she had "seen his legs give out underneath him" on certain occasions, causing him to fall. R. at 162.

At the hearing, Mehalik appeared with a cane. R. at 40. He testified that he had been using the cane for roughly two months. R. at 40-41. Mehalik described pain in his neck, lower back, knees and ankles. R. at 40. He stated that his back pain would dramatically increase

---

[12] A magnetic resonance imaging ("MRI") scan of Mehalik's lumbar spine was performed on March 17, 2011. R. at 298. Unfortunately, the results of the MRI scan are illegible.

whenever he remained in a sitting position for a long period of time. R. at 45. Mehalik responded in the negative when asked whether he could stand or walk for more than half of a standard workday. R. at 46. He insisted that humidity or moisture in the air would sometimes cause him to become short of breath if he needed to walk more than a few feet. R. at 43. Mehalik acknowledged that he was still smoking marijuana on an occasional basis. R. at 41. He asserted that he needed to smoke marijuana in order to "take[] the edge off of [his] pain." R. at 46.

In his decision, the ALJ accorded only "limited weight" to Dr. Mari-Mayans' assertion that Mehalik could stand or walk for no more than three hours throughout the course of an eight-hour workday. R. at 27, 229. Referring to Coe's "inherent bias due to her relationship with the claimant," the ALJ similarly gave "limited weight" to her contention that Mehalik had experienced difficulties while climbing flights of stairs. R. at 27, 162. The ALJ relied on Mehalik's earlier "function report" in determining that his testimony at the hearing had not been credible. R. at 27.

The Commissioner's regulations recognize that a claimant must be able to engage in "a good deal of walking or standing" in order to perform "a full or wide range of light work." 20 C.F.R. § 416.967(b). Mehalik challenges the portion of the residual functional capacity assessment relating to his alleged ability to perform the standing and walking requirements of "light" work. ECF No. 11 at 5-9. Relying on Dr. Mari-Mayans' assessment, Mehalik contends that he was actually limited to "sedentary"[13] work during the period of time relevant to this case.

---

[13] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

11

*Id.* at 12. He further argues that, as of his fiftieth birthday, a finding of disability was directed by Medical-Vocational Rule 201.14.[14] *Id.*

A claimant's subjective complaints must be given "serious consideration" whenever the record establishes the existence of a medically determinable impairment that could reasonably be expected to cause the symptoms described in his or her testimony. *Mason v. Shalala*, 994 F.2d 1058, 1067-1068 (3d Cir. 1993). In this case, Mehalik's testimony about his standing and walking difficulties was corroborated not only by objective evidence of medically determinable back and knee impairments, but also by treatment notes specifically documenting those difficulties. R. at 227, 293, 340. Coe's written statement concerning Mehalik's alleged inability to walk up a flight of stairs without stopping was consistent with the other documentary and testimonial evidence contained in the record. R. at 162. Furthermore, the statements contained in Mehalik's "function report" were not necessarily inconsistent with his assertion that he could not stand or walk for extended periods of time. When read in context, those statements suggest that Mehalik was not experiencing a significant amount of pain when he was sitting or lying down. R. at 136-146. Indeed, Mehalik specifically reported that he was "always out of breath," and that he did not have "as much strength" as he had enjoyed before the onset of his symptoms. R. at 141. He indicated that walking and stair climbing were among the daily activities adversely affected by his impairments. R. at 141.

Dr. Mari-Mayans opined that Mehalik could stand or walk for no more than three hours during the course of a typical workday. R. at 229. An opinion expressed by a single physician does not inevitably control the assessment of a claimant's residual functional capacity. *Brown v. Astrue*, 649 F.3d 193, 196, n. 2 (3d Cir. 2011). Nonetheless, the probative force of any particular

---

[14] The Commissioner can rely on the Medical-Vocational Rules "to determine issues that do not require case-by-case consideration." *Heckler v. Campbell*, 461 U.S. 458, 467, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

medical opinion can only be judged in relation to the evidentiary record as a whole. *Miller v. Commissioner of Social Security*, 172 F.3d 500, 505 (3d Cir. 2009). When conflicting medical assessments appear in the record, an administrative law judge is ordinarily "free to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). In any event, however, the administrative law judge "is not free to employ [his or] her own expertise against that of a physician who presents competent medical evidence." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). The rejection of a medical opinion cannot be based solely on an administrative law judge's "own credibility judgments, speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). If Dr. Mari-Mayans' report was insufficiently persuasive to conclusively establish the standing and walking limitations described therein, "it was incumbent upon the ALJ to secure additional evidence from another physician." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985). Since no physician found Mehalik to be capable of performing the range of "light" work encompassed by the ALJ's residual functional capacity assessment, that assessment is not supported by substantial evidence. *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986).

The statutory provision authorizing the commencement of this action provides a reviewing court with the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). An immediate award of benefits is justified only where "the evidentiary record has been fully developed," and where "the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D.Pa. 2010). That standard is not satisfied in this case.

Mehalik argues that he was limited to "sedentary" work, thereby requiring a finding of disability under Medical-Vocational Rule 201.14 as of his fiftieth birthday. ECF No. 11 at 12. Contrary to Mehalik's belief, the record does not necessarily support a finding that he was limited to work at the "sedentary" level of exertion. Under the Commissioner's regulations, jobs are classified as "sedentary" positions "if walking and standing are required occasionally *and other sedentary criteria are met*." 20 C.F.R. § 416.967(a)(emphasis added). A claimant must be able to engage in "a good deal of walking or standing" in order to perform "a *full or wide range* of light work." 20 C.F.R. § 416.967(b)(emphasis added). Dr. Mari-Mayans reported that Mehalik could satisfy the lifting and carrying requirements of "light" work. R. at 229. Given Mehalik's apparent ability to fulfill those requirements, the existing record could potentially support a finding that he was capable of engaging in a *limited range* of "light" work activities. *Santiago v. Barnhart*, 367 F.Supp.2d 728, 732-733 (E.D.Pa. 2005).

At the hearing, Edelmann was never asked whether the jobs identified in his testimony could be performed by an individual who could stand or walk for only three hours over the course of a standard workday. R. at 47-49. Moreover, he was not asked whether the standing and walking limitations described by Dr. Mari-Mayans would preclude an individual from performing other jobs existing in significant numbers in the national economy.[15] R. at 47-49. Consequently, it is not clear whether Mehalik was statutorily "disabled" even if it is assumed that the ALJ erred in declining to credit the standing and walking limitations described in Dr. Mari-Mayans' report. Because dispositive factual issues remain unresolved, the proper remedy is a remand for further proceedings rather than a judicially-ordered award of benefits. *Diaz*, 577 F.3d at 504-507.

---

[15] Mehalik's counsel posed no follow-up questions to Edelmann. R. at 49.

14

Section 105 of the Contract With America Advancement Act of 1996 ("CWAAA") amended the Social Security Act to provide that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." Pub. L. No. 104-121, § 105; 110 Stat. 847, 852-853 (1996); 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). The Commissioner has promulgated regulations to implement this statutory mandate. Under the applicable regulations, the critical question is whether a claimant who is disabled as a result of drug or alcohol abuse would remain disabled if he or she were to stop using those substances. 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). If his or her disability would persist even after a cessation of drug or alcohol abuse, he or she is entitled to benefits. 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii). If a claimant's disability would cease in the absence of continued drug or alcohol consumption, a finding of "materiality" is warranted, thereby requiring a denial of benefits. 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i). When the independent effects of a claimant's impairments cannot be separated from the effects of his or her continued substance abuse, an award of benefits is proper. *Salazar v. Barnhart*, 468 F.3d 615, 622-626 (10th Cir. 2006).

The impact of a claimant's substance abuse does not become relevant unless or until it is determined that he or she is otherwise "disabled." *Brueggemann v. Barnhart*, 348 F.3d 689, 694-695 (8th Cir. 2003). Since no finding of disability was made in this case, the ALJ had no occasion to consider whether Mehalik's ongoing use of marijuana would preclude his receipt of SSI benefits. *Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). The existence of this issue similarly counsels against an award of benefits and in favor of a remand for further proceedings. *Ambrosini*, 727 F.Supp.2d at 432.

## VI. Conclusion

For the foregoing reasons, it is respectfully recommended that the Commissioner's motion for summary judgment (*ECF No. 12*) be denied, and that Mehalik's motion for summary judgment (*ECF No. 10*) be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's decision, and a remand for further proceedings. It is likewise recommended that the decision denying Mehalik's application for SSI benefits be vacated, and that the case be remanded to the Commissioner for further consideration of that application. In accordance with 28 U.S.C. § 636(b)(1), written objections to this report and recommendation are due by April 7, 2014. A party's failure to file written objections will seriously impair his or her ability to challenge this Court's legal conclusions on appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193, n. 7 (3d Cir. 2011).

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: All counsel of record